The plaintiff seeks in the action to recover the sum of $1,400 which he claims is due him by virtue of the terms of certain policies of insurance, which on the first day of July last he held covering personal property owned by him at Whitehouse, Lucas county, the policies of insurance having been issued by the defendant company. He claims in his petition that on the occurrence of a fire destroying the property insured he duly notified the defendant of said fire the next day after it occurred; that on *22 or about the 10th day of July, 1903, the defendant, by its duly authorized agent and adjuster, inspected the scene of said fire and then and there gave plaintiff instructions as to what he should do with said merchandise not totally destroyed, and also then and there instructed plaintiff to obtain duplicate bills from the different firms from which plaintiff had purchased said merchandise destroyed by the fire and have them ready — the inventory and accounts of the same having been burned by said fire. He alleges that he followed all of the instructions thus given to him by the defendant “and waited as he was, by its representations and declarations then made led to believe would be given him as to how to make further proof of loss, until the first day of September, 1903, at which time no further instructions had been given him by said company; whereupon on said first day of September, 1903, plaintiff delivered to the defendant due proofs of his said loss and then duly demanded payment.” And he alleges that:
“By the instructions given to plaintiff and declarations and representations by it made, as aforesaid, defendant led plaintiff to believe that he should wait for and that he would be given further instructions as to how and what he should do in making further proof of his said loss antecedent to the payment of the same by said company, and because of said representations and instructions he was delayed and put to extra expense in making his said proof of loss. And but for said declarations and representations so made and instructions so given him by defendant as aforesaid, plaintiff could and would have made and filed the said proof of loss required by the policy within sixty days of said fire; wherefore defendant waived the filing of said proof of loss within sixty days, having prevented plaintiff from complying with that provision of the policy.”
This allegation is substantially made with reference to both policies upon which this suit is brought.
The defendant company admits the fire; admits that it issued the policies of insurance referred to in the petition; but denies that the proofs of loss were transmitted within sixty days, as required by the policies. It also denies that books of account and invoices of the stock were kept and made by the plaintiff, as required by the policies, and alleges that he did not keep an iron .safe in which the boobs and accounts could be securely locked and kept.
*23 The plaintiff does not claim in his petition to have complied ■with that provision of the policies which provided that the entire policy, should be void in ease of loss “if sworn statements in accordance with all the requirements of this policy, as hereinafter provided, shall not be rendered within sixty days after the fire.” The claim of plaintiff is that this particular provision of the contract — which is as valid and binding as any other provision of the contract, unless waived — was in fact waived by the defendant company, and that by reason of the conduct of the company and its authorized agent in so waiving this provision ■of the contract, the defendant company can not take advantage of the failure on the part of the plaintiff to file his proofs of loss within sixty days from the time of the fire. The allegations of the answer, that the plaintiff did not keep particular books of account or invoices of his stock, are denied in the reply; and at this point, in view of the testimony and the law which applies to this ease, it may as well be said that, so far as the matter of heeping the books of account is concerned, there is sufficient evidence here, beyond all question, to show a prima facie compliance on the part of plaintiff with that provision of the contract of insurance. And this is also true as to the invoices of the ■stock. It does not appear from the evidence just what shape the books of account were in, but that there were books of account showing the business of the plaintiff must be conceded on the proof made, and it also appears that these books of account were, at the time of the fire, in the store for use only during the day, and that when the fire occurred they were consumed with the rest of the property, there located. So far as the inventory is concerned, whether or not it is a complete inventory, •showing in every detail the amount of plaintiff’s stock covered by these policies of insurance, is not a material matter at this time; it is produced here and offered in evidence as an invent tory, and until it is attacked, it should be treated as a substantial compliance with the provisions of this contract. The defense that an iron safe was not kept by the plaintiff and its books of account kept in it, can' not avail the defendant, in view of the terms of the policy and the facts as disclosed by the evidence, that the plaintiff’s books of account were kept in the store in the .daytime when in use, and at his house when not in use.
*24 ’ The only other question, therefore, raised by the pleadings as a bar to this action, is that with reference “to the waiver of the provision of the policy that proof of loss was not made by the plaintiff within sixty days from the time of the fire. The question left, therefore, is whether the evidence in the case tends to show that this provision of the contract of insurance has been actually waived by the company, or whether it should be treated as having been waived, under the evidence in the case.
At the outset it may be well to review the testimony on this subject. Manifestly, the burden of establishing this fact of waiver, in face of the admission that this provision of the contract has not been complied ivith, is upon the plaintiff in the case; and a careful review of the notes of the stenographer has satisfied me that substantially all of the testimony on the subject is as follows: The plaintiff testifies that the day after the fire he notified the soliciting agent of defendant company, at Swan-ton, of the fire; and the evidence shows that the soliciting agent —as was customary in the business — thereupon telegraphed to 'the company that a loss had occurred, and also wrote to the company, giving such information with reference to the fire, the amount of the loss, etc., as he had at hand. Thereafter, in about ten days, plaintiff testifies that Mr. Meeks, an adjuster, came to see him at his home in Whitehouse. That Mr. Meeks made inquiries for the policies, which the plaintiff produced. Mr. Meeks then wanted to know about the iron safe, and plaintiff said: “I told him that I didn’t have any.” That “Mr. Meeks thereupon threw up his hands. I told him that the books were burned. Meeks said to get duplicate bills. He said it would probably take about ten days. I then proceeded to get duplicate bills, and expecting him on every train, I kept waiting and waiting and waiting. I never met Mr. Meeks again. He said I should get duplicate bills and have them in readiness, and he wanted to know whether I had taken an inventory. I think I told him that I had one but it was destroyed. I afterwards found it.”
Mrs. Billings, the wife of the plaintiff, on this subject testifies that Mr. Meeks represented himself to be the adjuster, and she says “He asked questions and gave us advice. He told us *25 to produce duplicate bills from wholesale houses and take an inventory of the goods and get them all together — the papers— and have them ready for his inspection.” Counsel for plaintiff then asked this question: “When would that be?” And the answer was, “Well, he said to Mr. Billings” — and the court then asked, “What did he say then?” She answered: “He said that would take perhaps a week or ten days.” The question then was asked: “Were the duplicates obtained?” And the answer was, “Yes, sir; we made an inventory and did everything that he advised us to do. ’ ’ She was then asked by counsel for plaintiff if he had come back, as he had promised to do, and she testifies that he never came back.
Now, giving full force to the testimony of the only parties who have given evidence on this subject — and I think I have included in these extracts from the testimony all of the evidence that we have in reference to the representations or agreements that can be claimed were made by Mr. Meeks, or entered into by him — the most that can be claimed from this testimony is that Mr. Billings understood, as a result of this visit and conversation, that Mr. Meeks would return and look over the papers which he advised them to procure. There is no pretense here that he said he would return, or that he agreed to return. All that can be claimed is, that, from what he said and the way he acted, the plaintiff was led to believe that he would see him again. Now it seems to me from this testimony, a strained and unnatural conclusion, if such conclusion were arrived at by the plaintiff, that this particular provision of the contract would not be insisted upon by the company.
It appears on the cross-examination of both the plaintiff and his wife, that Mr. Meeks asked for these policies, and that their attention was called to the contents of the policies, as showing the company’s contract.
In view of what the testimony shows took place between the agent of the company and the plaintiff, I do not think that the plaintiff could reasonably have been led by anything done or said by Mr. Meeks, into thinking that he could wait for moro than sixty days without filing his proof of loss, or that he need not file it at all. But. conceding, for sake of the argument, *26 that there are circumstances developed here from which the Jury could find the plaintiff justified in believing, and that he •did believe that, in spite of the terms of the policy, he could .await the return of Mr. Meeks before taking this matter up •again, what is the law that would govern us at this time ?
In this action it should be borne in mind that the plaintiff :stands here seeking to recover upon a contract in writing entered into between him and the insurance company. And accepting ■this contract in consideration of the premium which he paid to the agent of the company, he became bound by its terms just as .absolutely as the company itself. No provision of the contract can be ruled out, under the issues in this case, because it is con- • clusively presumed that the plaintiff not only understood its terms, but that he agreed to stand or fall, in case of loss by fire, by its terms. His contention now is that a provision of his policy which required him, in case of fire, to make a sworn statement in accordance with the terms and requirements of his policy, should be rendered within sixty days after the fire, shall be counted of no effect because the agent of the company sent there for the purpose of investigating and adjusting the loss, led him to believe that that particular provision would not be enforced and insisted upon by the company itself. Could Mr. Meeks waive this provision of the contract? A further provision of the policy reads as follows: “This policy is made and accepted subject to the foregoing stipulations and conditions, together with such other provisions, agreements or conditions as may be endorsed hereon or added thereto, and no officer, agent, or other representative of this company shall have power to waive any provision or condition of this policy except such as 'by the terms of this policy may be" the subject of-agreement endorsed hereon or added thereto, and as to such provisions and conditions, no officer, agent or representative shall have such power or be deemed or held to have waived such provision or ■conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached.” Now that provision of this policy is perfectly plain and must be held, in determining the *27 right of these parties, to mean just what it says. Whatever may have been the disposition of the courts of this state heretofore, as shown by the decisions on the question of waiver by agents or representatives, in view of the decisions of the Supreme Court in 62 O. S., to which reference will hereafter be made, and the authorities there referred to, the policy of the courts of this state now is to restrict the action and conduct of the insurance agent to such authority as is specifically granted by the company; and in the absence of fraud or mutual mistake, or such circumstances as will estop the company from claiming that the provisions of the contract of insurance have not been waived, the provisions of these policies of insurance will stand, unless such changes or waivers as are alleged are endorsed in writing upon the policy itself.
In the case of Traveler’s Insurance Co. v. Myers & Co., 62 O. S., 529, in the third paragraph of the syllabus, the court say:
“When such policy contains a stipulation that ‘no agent has authority to waive or alter anything in this policy contained,’ and the same is accepted by the insured, it is both notice to and an agreement by the insured that an agent has no authority to waive or alter anything contained in the policy.”
And in this ease, at page 540, Judge Davis, who rendered the decision, uses this language:
“Equally unavailing for the defendants in error is the claim that the stipulation for notice was waived by Mason, the insurance company’s local soliciting agent, or that the company is estopped to plead the contract in defense, by misleading statements made by Mason. The apparent scope of Mason’s authority did not justify the insured in accepting and relying upon his words when this accident was verbally reported to him. He was a mere soliciting agent, and was invested with none of the powers of a general agent, or of a special adjusting agent. It does not appear to us that he was entrusted with any duties in regard to receiving and transmitting notice or of adjustment between the parties to the policy. So far as we are informed his duties ended when he received and transmitted to the company the application of the insured for the insurance. Therefore the defendants in error had no right to rely on his advice or suggestions in regard to a matter which was not within the apparent scope of his authority; and still less could'they so rely on *28 his advice when it was distinctly contrary to the contract stipulations. It was further expressly stipulated in the policy that 'No agent has authority to waive or alter anything in this policy contained.’ The policy is not unilateral. Since the insured have received, accepted and retained the policy, they are parties to it, although not signing it, and are presumed to know and accept all of its terms and'conditions (Union Central Life Ins. Co. v. Hook, ante p. 256). The insured having agreed that the’ stipulation as to notice could not be waived or altered by an agent, can not excuse themselves for non-performance of the contract as to notice to the company, by showing that they acted on the suggestion of the soliciting agent, that they should not perform the contract as they had made it. In this conclusion we are sustained by numerous authorities in other states. (Citing them.)
“We are aware that there are decisions to the effect that condition in respect to notice and proofs of loss may be waived by an agent, nótwithstanding a provision that no agent can change the same. Those decisions are put upon the ground that such limitations on the authority of agents apply only to provisions relating solely to the formation and continuance of the policy, and which are essential to the binding force of the contract while it is running, and do not apply to conditions which are to be performed after the loss has occurred, such as giving notice and proof of loss. While we prefer to put the decision of this case on the grounds, and in line with the decisions already stated, we think that we have made it sufficiently clear that the stipulation as to notice in this policy is of the very substance of the contract in insurance of the kind here contracted for, and therefore could not be waived by the agent.”
The court in the above case refers to a decision of the case of Union Central Life Insurance Co. v. Hook, page 256, of the same volume. The third paragraph of the syllabus thereby referred to and approved is as follows:
“When such policy provided that the contract of insurance is completely set forth in the policy and application and that none of its terms can be modified except by an agreement in writing signed by the president, vice-president or secretary, and also that no agent has authority to extend or postpone the time of payment of any premium or note, the insured can not recover on ■a verbal modification of the terms of the policy made by an agent of the insurance company extending the policy one year and waiving the payment of an annual premium, in the absence *29 of such knowledge and acts by the insurance company as would estop it from alleging in defense the provisions of the policy. ’ ’
The same doctrine is laid down in Eureka Fire & Marine Insurance Company v. Baldwin, at page 368 of the same book. The third paragraph of the syllabus is as follows:
‘ ‘ The power of an agent to waive conditions in a policy of fire insurance is not different from the same power in life insurance. As to such power, Union Central Life Ins. Co. v. Hook, 62 O. S., 256, is followed and approved.”
It does not appear in' any of these eases that the agent who it was claimed consented to a change in the terms of the policy, or to a waiver of its terms, was an adjusting agent, and a possible distinction between the powers of an adjusting agent and a soliciting agent is suggested by Judge Davis in discussing the first case to which I have referred. This was by the way of argument, however, and though pertinent to that case as emphasizing the justice of the rule, it does not follow that the authority of the eases to which he directly refers at the close of the paragraph-and which seem to form, among other eases, as he says, the basis of the court’s decision, were not fully approved by the court.
The general principles upon which it seems to me the rule adopted by the Supreme Court is founded, are explicitly stated, in the first place in a decision of the Supreme Court of the United States in the case of Northern Assurance Company v. Grand View Building Association, in 183 U. S. Reports, a very long decision, and I will quote only a few sentences from the syllabus, on page 309:
“Where fire insurance policies contain certain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company’s assent to other insurance, such limited grant of authority is the measure of the agent’s power.
“Where such limitation is expressed in the policy, the assured is presumed to be aware of such limitation.
“Insurance companies may waive forfeiture caused by nonobservance of such conditions.
“Where waiver is relied upon, the plaintiff must show that *30 the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition.
“Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company subsequently, with knowledge of the facts, ratified the action of the agent. ’ ’
In Vol. 160, Massachusetts Reports, page 183, is the case of Henry Porter, Adm’r, v. U. S. Life Ins. Co.; on page 185 of the decision the court uses this language:
‘ ‘ The terms of the policy are clear. The contract is to become null and void if the premiums are not paid when due, except as provided in the special conditions on the back of the policy, and those conditions can not be modified or waived except in writing signed by the president and secretary or actuary. The receipts for premiums given to the insured stated that, ‘No person except the president, secretary, assistant secretary, or actuary is authorized to make, alter or discharge contracts or waive forfeitures.’ It does not appear that Waite ever before had attempted to waive the conditions of the policy, or that the company or its directors, or that the president and secretary or actuary ever knew that Waite had made such an attempt, or claimed to have any such power. There is no evidence of any conduct of the company, or of any officers expressly authorized to waive any of the conditions of the policy, which can be held to estop the company unless Waite’s conduct can have that effect; and we do not see how Waite’s conduct can have that effect unless he was authorized to waive the conditions, or was held out by the company as haying such authority. We see no evidence that he was authorized to waive this condition, or was held out by the company as having such authority, and there has been no ratification by the cpmpany of any waiver by him. The condition we are considering concerns the continuance of the contract, and goes to the substance of the plaintiff’s claim. Evidence that he had authority to send for the blanks on which the written demand was to be made, is not evidence that he had authority to waive such a demand. We think that the failure to perform a condition of a contract, the performance of which is essential to the continuance of the contract, can not be waived by an agent when the contract itself declares that he shall not have the power to waive it, or that only certain officers which do not include him shall have such power, unless after the contract was made authority has been given to the agent to waive the condition, or the company has knowingly permitted him 'to waive such condition.”
*31 Judge Davis, in the Traveler’s Insurance case, refers to 90 Iowa, 457 (Kirkman v. Farmers’ Insurance Co.). In that case-the property insured was a frame dwelling with certain household furniture and personal property kept and used in the house.. The fire occurred on the 27th day of June, 1890. The policy provided that in ease of loss of the property by fire:
“The assured shall forthwith give notice of said loss to the-secretary of the company, and within sixty days render a particular account of such loss, signed and sworn to by the assured, stating when and how the loss originated, the nature of the title- and interest of the assured and all others in the property. ’ ’
This is substantially the requirement of the policies now in. suit.
The decision proceeds:
“The application for the insurance was taken by one Mullen,, a local agent of the defendant, who was a mere soliciting agent,, without authority to issue policies. The day after the fire the husband of the plaintiff called upon Mullen and advised him of' the loss, and Mullen wrote a letter to the company, at Cedar Rapids, giving notice of the loss. It is conceded that no proof' of loss such as is required by the policy was made within sixty days after the fire. The plaintiff claims that formal proof of' loss was waived by the defendant. In our opinion the determination of this question is decisive of the case, and no other question need be considered.”
I have read from the opinion, on page 458. On page 461, the-court proceeds as follows:
“It is further claimed that one J. H. Stahl was an agent of" the defendant, known as an adjuster of losses, and that within sixty days, and on the eighth day of July, 1890, he appeared, upon the premises where the property which was destroyed was-situated, and that in conversation with the plaintiff and her-husband he waived proof of loss, and stated that the insured had done all that was required for them to do, and that the defendant would settle the loss in sixty days. There is some doubt as to whether there was evidence sufficient to authorize a finding-that Stahl was an adjusting agent, or that he was clothed with power to waive any stipulation in the policy. This question we-need not consider because the policy in suit contains this provision: ‘It is expressly provided that no officer, agent, or employe of this company, or any other person, can in any manner waive any of the provisions, conditions or requirements of this policy,. *32 except the secretary, and he only in writing hereon; and this policy is made and accepted on the above express condition.’ There is no question as to the rights of the parties under such a contract as this. There is no statute in this state by which insurance companies are bound by all the acts of the agents which they send out to deal with the public, and the courts can not say that a contract. limiting the power and authority of agents is void. The plaintiff in this case must be held to have assented to this stipulation in the policy, and for aught that appears, she is bound thereby (Citing authorities). ' We have disposed of this question of waiver without determining whether the president of the company, notwithstanding the terms of the policy, had the power to make a valid waiver of its conditions. As we have said, we do not regard either the postal card or letter as evidence of a waiver. As to the declarations of the agent, Stahl, it is clear from the above-named cases, and many others that might be cited, that he had no authority to waive proofs of loss. We think the motion to direct a verdict for the defendant should have been sustained.”
Another case referred to by Judge Davis is in 60 Vermont, p. 582 (Smith v. Insurance Co.) This was an action on a policy by the insured. On page 683 this appears:
“Immediately succeeding the fire the plaintiffs notified Messrs. Cudworth & Childs of the loss; and in a few days thereafter Mr. Cudworth, in company with Mr. Henry R. Turner, the defendant’s general agent having the supervision of all the company’s affairs and its adjuster of losses within and for the New England states, visited the premises, examined the property damaged by fire, and the schedule of property destroyed therein which the plaintiffs had prepared in anticipation of said adjuster’s visit.
“The evidence of the plaintiff tended to show that at this visit they furnished Mr. Turner with such knowledge and information as they then had, relative to the origin and circumstances of the fire, and also agreed as to the amount and value of the property damaged and destroyed as shown by the said schedule in writing furnished as aforesaid; that owing to the fact that rumors were afloat in that community in regard to said fire being of an incendiary origin, and with that the plaintiff’s name was connected, Mr. Turner desired to make some further inquiry before making a final adjustment; that plaintiffs requested Mr. Turner to -make a full and thorough examination, and satisfy himself as to the cause and origin of the fire; that they were ready and willing to make a sworn statement relative to said fire and the property damaged and destroyed, which, in their *33 opinion, when made, would be much greater in amount and value than was shown by said schedule..
“Against the objection and exception of the defendant, both of the plaintiffs were permitted to testify that on the occasion of the aforesaid visit, and in reply to their declaration of a willingness to make a sworn statement, Mr. Turner said to them that he was satisfied that property to the full amount of the insurance had been destroyed, and that no statement in writing, sworn to, was required of them, and that he would see them again relative to said adjustment in a very short time; that when Mr. Turner left he carried away with him the schedule of property which plaintiffs had prepared as aforesaid, and upon which the valuations agreed as aforesaid had been carried out. The plaintiffs did not see Mr. Turner until July, 1887, and after suit was brought.
“The defendant insisted that the plaintiffs were not entitled to recover, and that a verdict should be directed for the defendant for the following reasons: * * *
“3. Because the plaintiffs did not render to the defendant, within thirty days after the fire, a particular statement of the loss, signed and sworn to by the assured, as is required by paragraph 3 of the 6th subdivision of the policy and contract of insurance. And, further, that the jury should be charged that the rendering of such a statement, sworn to by the assured, was a condition precedent to the plaintiff’s right to recover.”
On page 690 of the decision the court say, in the fifth paragraph :
“By paragraph three of the sixth condition of the policy it was the duty of the assured in case of loss to furnish the defendant, within thirty days, a statement of the loss, signed and sworn to. It is conceded that no statement was furnished. It was á condition precedent to a recovery, as it was so provided by the terms of the policy (Donahue v. Ins. Co., 56 Vt., 374). That the proofs of loss may be waived by the company is unquestioned (Findeison v. Metropole Ins. Co., 57 Vt., 520). The plaintiffs claimed upon the trial that the proofs of loss were waived; the jury so found. The evidence upon which this finding was based was the testimony of the plaintiffs, as to the declarations of Turner and Cudworth, who, as the plaintiffs claim, were acting as the agents of the defendant. Turner was the general agent of the defendant, having supervision of all its affairs, and its adjuster of losses; and unless restricted in his authority, the plaintiffs having notice thereof, we think had all the power of the company, in the settlement of a loss, to waive any of the conditions of the policy.
*34 “Cudworth was the local agent of the company with power to receive proposals for insurance, fix rates of premiums, and issue policies. It does not appear that he was ever held out by the defendant as possessing any other authority or ever acted in the settlement of losses.
“Having held that Turner had authority to waive any condition of the policy, the question remains whether he could do so save in the manner provided by the contract. One condition of the policy is that no officer, agent or representative of the company 'should be held to have waived any of the conditions of the policy unless such waiver was indorsed on the policy. This provision was a valid one, binding upon the parties, and effect should be given to it. While the defendant could give its oi’al consent to a waiver of the statement, no officer, agent or representative could consent unless the consent was indorsed on the policy. This point we think is well taken. In Carrigan v. Ins. Co., 53 Vt., 418, the contract provided that no agent was empowered to waive any of its conditions without special authority, etc., and it was held that this term referred to local agents, not general ones, and the case notes the distinction between the two; here the limitation is upon the authority of any officer, agent or representátive. ’ ’
Substantially the limitation that is in the policy in question.
“If Turner was not an officer, he was certainly a representative, and his want of authority to waive any condition unless by writing indorsed on the policy was brought to the knowledge of the plaintiffs by the contract itself; and where an agent’s acts are in excess of such authozity the principal is not bound.
“Where an agent has apparent authority to do an act his principal is bound, and if the latter claims that the act is in excess of the agezzt’s real authority, he should show actual notice to the party with whom he deals. In the case at bar the law presumes notice; it is a part of the contract, the plaintiffs agreed to it. Why should they be released from their agreement?”
In Walsh v. Hartford Fire Ins. Co., 73 N. Y., p. 5, a ease referred to by Judge Davis in the Traveler’s Insurance Co. case, the court were called upon to meet a question similar to the one involved in this suit, and the court say, on page 9:
• “The company could itself dispense with this condition by oral consent, as well as by writing; and Carpenter, unless specially restricted, would have possessed in this respect the power of the principal. But the policy contains the provision that no *35 agent of the company shall be deemed to have waived any of the terms and conditions of the policy unless such waiver is indorsed on the policy in writing. This is a plain limitation upon the power of agents, and can mean nothing less than that agents shall not have the power to waive conditions, except in one mode, viz., by an indorsement on the policy. The plaintiff is presumed to have known what the contract contained, and the proof tends to the conclusion that this provision was brought to his notice. He saw fit, however, to accept the assurance of the agent that an entry in the register was sufficient. It is difficult to see how, upon the law of contracts and agency, the plaintiff can recover. The entry in the register was not an indorsement on the policy. The oral consent was an act in excess of the known authority of the agent. The provision was designed to protect the company against collusion and fraud, and the dangers and uncertainty of oral testimony. The ease seems to be a hard one for the plaintiff; but courts can not make contracts for parties, nor can they dispense with their provisions. ’ ’
Now if the law in this state is as indicated by the decisions of our Supreme Court to which I have referred and the decisions upon which the court seems out of numerous other decisions to base their finding, I am unable to see how it can be claimed under the evidence in this ease that there was a waiver of this provision of the contract of insurance by Mr. Meeks. It must be borne in mind that so far as Mr. Meeks is concerned, that the testimony shows that on getting notice of this fire, from the agent of the company at Swanton, Mr. Meeks was sent to White-house by the company. In other words, this loss was turned over to him — that is the effect of the testimony of the company’s agent, Mr. Meister. He described himself when he went to Whitehouse as an adjuster. He is referred to by Mr. Meister as the company’s agent, as a “state agent.” But, in view of these authorities, can it be said that although he may have given plaintiff in this action reason to believe that he would return and take up the consideration of the loss and the adjustment of it, that the plaintiff could thereupon sit down and await his return and allow this sixty days to elapse and then claim that the company has. misled him with reference to his rights ? The hardship which Mr. Billings has suffered from the loss, of course, can not be overlooked by any person who realizes the situation that he probably is in; but, as between him and *36 the insurance company, can it be said that he, without closing his eyes to the provisions of this contract, could have been misled by anything that Mr. Meeks did? There is no evidence that Mr. Meeks told him to wait, or suggested that he should await his return; he told him to get his duplicate bills and have them in readiness, and from that Mr. Billings inferred that he was coming back, but it does not appear from this evidence that any false representation was made by Mr. Meeks with reference to his connection with the company or with reference to the terms of this contract. But even if he had made such false representations; if he had agreed to return before the sixty days had expired; if he had told Mr. Billings that this particular provision of the contract would not be enforced against him by the company, he would have done something which the contract itself prohibited him from doing, and the company would not have been barred by what he said. In other words, the terms of the contract of insurance put Mr. Billings on notice, and the law presumes that he knew at the time that the company would not recognize, unless indorsed upon the policy, any agreement made by Mr. Meeks or any officer, agent or other representative of the company. He was told as plainly by this policy of insurance that Mr. Meeks could not waive its sixty days provision, as he was that in case of a fire and compliance with terms of the contract, he would be reimbursed for his loss. The contract, the evidence shows, was itself referred to by Mr. Meeks— was called for by him, and to some extent, to what extent it does not clearly appear, its terms were discussed; and that the plaintiff was criticised there by Mr. Meeks in such a way for his failure to do what the policy required, that he lost his temper and threatened to hire a lawyer and bring a lawsuit to enforce his claims.
Now, under all of these circumstances, it seems to me clear that the plaintiff has wholly failed to establish his cause of action. It is, therefore, my duty to grant the motion that has been made; the jury will be directed to return a verdict for the defendant.